**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

OREN H. JONES                                                                                                               PLAINTIFF

v.                                              No. 5:11CV00259 JLH

EVERGREEN PACKAGING, INC.                                                                                     DEFENDANT

**OPINION AND ORDER**

Oren Jones brings this action against Evergreen Packaging, Inc., his employer, alleging that Evergreen discriminated against him on account of his race by suspending him without pay in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Arkansas Civil Rights Act of 1993, Ark. Code ann. § 16-123-107. Evergreen has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For reasons that will be explained, Evergreen's motion for summary judgment is granted.

**I.**

Jones is an Operator at Evergreen, a paper facility in Pine Bluff, Arkansas, who maintains Evergreen's production of groundwood pulp. Evergreen placed Jones on administrative leave, i.e., suspended Jones without pay, from May 19, 2010, through August 22, 2010, for comments Jones made to Mark Dial and Randy Frisby, two Evergreen employees. On May 10, 2010, Frisby, Dial, and Jones were discussing a meeting Jones was to have the next day. Jones was going to meet with Dianne Haven, an employee in Evergreen's human resources department, and Jeff Conner, who worked in Jones's groundwood pulp department, to discuss disputes that Jones and Conner were having with each other. After Dial commented that Jones might get fired at the meeting, Jones replied that if he was fired, he would "go postal" and would come back to Evergreen and start

shooting people.[1]

Another Evergreen employee, Chris Lee, reported Jones's statements to Haven, and Evergreen began an investigation into the incident. Haven met with Dial and Frisby separately and took statements from them. In addition to explaining Jones's aforementioned statements, Dial and Frisby both said that during the same discussion, Jones told them that he does not have a sense of humor. Frisby said that Jones was not smiling when he made the statements about coming back to shoot people. Haven contacted the manager and vice president of Evergreen's human resources department to discuss the situation with them. Haven then called Jones into her office to hear his side of the story. Jones's union representative and other Evergreen administrators were present as well. In the meeting, Jones explained that if he made the statements that Dial and Frisby attributed to him, he said them as a joke.[2] After Jones did not explicitly deny making the statements, Evergreen put him on administrative leave because Evergreen found that Jones did make the statements attributed to him and that these statements constituted a threat of workplace violence. Evergreen has a written Workplace Violence Policy that prohibits employees from "threaten[ing] violence in the workplace." An employee who violates this policy "is subject to immediate disciplinary action, up to and including termination." Through its employee assistance program, Evergreen found workplace-violence counseling for Jones. Evergreen allowed Jones to return to

---

[1] According to Dial, Jones said, "I'll come out here and start going pow, pow and shooting people," and Jones said that he would walk up to people, say "I'm sorry," and then go boom (as he said this, he was pointing his finger to indicate the pulling of a trigger). Document #22-2, at 5; Document #22-14, at 1. According to Frisby, Jones said that he would "go postal" and also that he would "just walk up to people and go bang." Document #22-15, at 3.

[2] In a deposition for this action, Jones stated that at this meeting he denied making the "go postal" comment, but he also acknowledged that he said, "[I]f I did say that, them I'm sure I was joking," at the meeting. *See* Document 28-1, at 16.

work at his previous position after he received counseling and his counselors determined that he did not constituted a threat to the workplace.[3]

Jones, an African American, brought this action claiming that Evergreen placed him on administrative leave on account of his race. To support this claim, Jones argues that Evergreen did not take the malevolent actions of Conner, who is Caucasian, seriously enough to suspend Conner yet suspended Jones for a statement that, if Jones made, was a joke. Jones refers to multiple incidents that occurred between Conner and him about which Jones complained to his superiors at Evergreen.

Jones, for instance, complained that Conner intentionally sprayed him with water from a hose while Conner was working on a catwalk above Jones. Conner said that it was an accident, and no one else witnessed the incident. Jones was not injured, but he reported the incident to Larry Townsend, his foreman. Townsend reprimanded Conner.[4] Jones was aware that Townsend investigated the incident, and Jones did not complain when Conner was not punished more severely.

Jones complained that a second incident with water occurred when Conner flipped a switch to allow water to come out of a leaky grinder[5] that Jones was checking, with the low-pressure leak wetting Jones. Conner denied flipping the switch with the intent of wetting Jones, and no one else witnessed the incident. Jones and Conner spoke about the incident with Harold Burchett, the acting

---

[3] On June 3, 2010, Jones signed a Last Chance Agreement provided by Evergreen in which Jones acknowledged that he was suspended for just cause and that once he was cleared by a counselor, he would have the opportunity to return to Evergreen.

[4] According to Conner, he or someone else cleaned the equipment on the catwalk with water every day, and almost every day someone is walking below the catwalk that gets wet from the water. Document #22-9, at 3.

[5] Groundwood pulp is produced by placing wood onto a conveyor belt and pulling the wood with a wood hook into a grinder.

foreman, who issued an employee counseling record of the discussions. Jones did not allege that he was injured or felt threatened as a result of this incident.

On April 20, 2010, one of the grinders jammed. Jones and Conner met with Burchett to discuss the jammed grinder. Conner denied jamming the grinder; Jones would not respond when asked who jammed the grinder. No one else witnessed the grinder's jamming. Burchett prepared employee counseling records for Jones and Conner. Jones refused to initial his record. Jones complained that Conner cursed at him during this incident.[6] Conner's employee counseling record shows that Burchett told Conner and Jones to work and communicate in a professional manner and told Conner that any further issues with Jones would lead to disciplinary actions up to and including termination.

Jones also complained that on May 8, 2010, Conner shook a wood hook – which is an instrument used to pull wood from a conveyor belt into a grinder – at him in a threatening manner. This occurred after Conner accused Jones of jamming Conner's grinder on purpose. Jones and Conner had counseling with Townsend and Bobby Roberts, Jones's union representative, both of whom concluded that Conner did not threaten Jones's life by shaking the wood hook at Jones while standing approximately twenty feet away from Jones.[7] Townsend and Roberts' report also concludes that Jones and Conner "have been having issues with each other and this was an ongoing thing."

---

[6] Connor's employee counseling record of the incident states, "Oren ask [sic] Connor [sic] about the jammed grinder on front pick and Connor [sic] stated that some son of a bitch jacked off the G & H valve and jammed it." Document #22-8.

[7] Jones says that he and Conner were approximately eight feet from each other when this occurred, but Townsend and Roberts' report states that Conner and Jones were approximately twenty feet from each other.

On May 11, 2010, Jones and Conner met with Haven to discuss getting along and working as a team, because both of them had been having issues with each other. They both agreed to get along better. Jones did not complain at this meeting about Conner's shaking of the wood hook on May 8, even though this meeting occurred only three days later.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

Because Jones brings forth no direct evidence of racial discrimination, this Court assesses Jones's claim under *McDonnell Douglas*'s burden-shifting framework. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006). Under this framework, Jones has the burden of establishing a prima facie case of employment discrimination. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005). To establish a prima facie case of race discrimination, Jones must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005). The burden of establishing a prima facie case is not onerous. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981).

If Jones establishes a prima facie case, Evergreen must articulate a legitimate, non-discriminatory reason for its adverse employment action. *Davis*, 421 F.3d at 704. If Evergreen meets this burden of production, Jones has the burden to prove that Evergreen's proffered justification is merely a pretext for discrimination. *Id.* "The plaintiff has the burden of persuasion at all times." *Id.* While the burden of establishing a prima facie case is not onerous, the test for establishing pretext is rigorous: the plaintiff must show that employees outside of his protected class who were treated differently were similarly situated in all relevant respects. *Wimbley*, 588 F.3d at 962 ("[T]he misconduct of the more leniently disciplined employees must be of comparable seriousness." (internal quotation marks omitted)).

Assuming without deciding that Jones has established a prima facie case of race discrimination, Evergreen has met its minimal burden of establishing a legitimate, nondiscriminatory

reason for suspending Jones without pay and Jones has not met his burden of showing that Evergreen's proffered reason was a pretext for unlawful race discrimination. Evergreen's legitimate, nondiscriminatory proffered reason for placing Jones on administrative leave is that Jones threatened to "go postal" if he was fired and indicated that he would come back to Evergreen and shoot people with a gun. Keeping the workplace safe is a legitimate, nondiscriminatory reason for a company to act.

Jones cannot establish that Evergreen's proffered reason for placing Jones on administrative leave was a pretext for race discrimination because Jones cannot show that similarly situated Evergreen employees who were not African American were treated differently than Jones.[8] Jones argues that Conner's malevolent actions were similar to or worse than Jones's and that Evergreen did not take Conner's actions seriously enough to suspend Conner yet suspended Jones. Connor and Jones, however, were not accused of similar types of conduct. While Jones evidences his interactions with Conner to show that he and Conner were similarly situated but treated differently, Jones was not suspended for conduct that involved his interactions with Conner. Instead, Jones was suspended for commenting to Dial and Frisby that if he got fired in his upcoming human resources meeting, he would "go postal" and would come back to Evergreen and start shooting people.

---

[8] Evergreen concedes that Jones has established the first and third elements of his prima facie case. In addition to the fourth element, Evergreen argues that Jones has not established the second element – he has not met Evergreen's legitimate expectations. To establish this element, however, Jones need only show that, aside from Evergreen's reasons for suspending him, Jones was "*otherwise* meeting expectations or *otherwise* qualified." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Jones has established this element, and Evergreen has not argued that, aside from his statements that warranted suspension, Jones was otherwise not meeting Evergreen's expectations.

7

In contrast, Jones accused Conner of wetting Jones down twice,[9] cursing at him, and shaking a wood hook at him from several feet away. Even if one can construe shaking a wood hook at another person from between eight and twenty feet away as a threat of violence, it does not connote the same level of seriousness as a threat to come to a business and start shooting people, which is what Jones was accused of threatening. Jones does not even seem to have taken Conner's wood-hook shaking as a serious threat of violence, since Jones did not mention the incident in his meeting with Haven and Conner three days later, where the meeting's purpose was to discuss ongoing disputes between Conner and Jones.

Moreover, no one besides Jones witnessed Conner's actions and therefore no one could corroborate Jones's complaints against Conner. Evergreen investigated each of Jones's complaints against Conner and produced written counseling records or reports of their investigations. Townsend and Roberts concluded in their report that Connor's shaking of the wood hook was not a threat on Jones's life. Alternatively, Dial and Frisby heard Jones remark about coming back to Evergreen and shooting people. Evergreen interviewed Dial and Frisby separately, and their recounts of the incident were similar. Neither indicated that they believed Jones was joking, and both said that Jones had told them during that same discussion that he does not have a sense of humor. Jones did not even explicitly deny making these statements when confronted with the allegations. Therefore, Evergreen was able to corroborate Jones's threatening statements.

The evidence makes clear that Jones and Conner did not work well together. Both complained about the other to their superiors and to Evergreen's human resources department.

---

[9] Even Jones acknowledges that he was in no way physically injured from being hosed down with water. *See* Document #28-1, at 6.

Evergreen treated their complaints against each other in this context – as complaints between two employees who did not work well together – and attempted to defuse the situation through counseling sessions and through meetings with the human resources department. In their meeting with Haven, for instance, Jones and Conner agreed to get along better. In this context, Jones and Conner were similarly situated and were treated similarly.[10] But to compare workplace friction involving two employees who dislike one another to a threat to "go postal" and begin shooting people minimizes the seriousness of such a threat. While Jones said that if he made the threat, it was a joke, Frisby and Dial both stated that Jones said in that same conversation that he does not have a sense of humor. Evergreen's reason for placing Jones on administrative leave was to determine whether he constituted a threat to the workplace. When it was determined that he did not, Evergreen allowed him back to work. Evergreen took reasonable actions when presented with Jones's statements; anything less and Evergreen would have been neglecting its duty to keep its workers safe. Evergreen was not presented with evidence that Conner had made any threats, much less a threat of the same level of seriousness. Jones cannot point to any employee, including Conner, who was involved in conduct that presented a similarly serious threat, and Jones therefore cannot meet his burden of establishing that Evergreen's proffered reason for placing Jones on administrative leave was a pretext for race discrimination.

## CONCLUSION

Assuming without deciding that Jones established a prima facie case of race discrimination, Evergreen proffered a legitimate, nondiscriminatory reason for suspending Jones, and Jones cannot

---

[10] In fact, in this context, Evergreen may have treated Conner more severely. Conner was issued employee counseling records and was reprimanded for Jones's complaints, even though Jones's complaints were not corroborated.

show that this reason was a pretext for race discrimination. Therefore, Jones cannot prevail on his race-discrimination claim, and Evergreen's motion for summary judgment is GRANTED. Document #22.

    IT IS SO ORDERED this 18th day of January, 2013.

                                                                           _____
                                                                           J. LEON HOLMES
                                                                           UNITED STATES DISTRICT JUDGE